UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| 211 WAUKEGAN LLC, | ) | Bankruptcy No. 11 B 13104 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION ON ITASCA BANK'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Itasca Bank & Trust Co. ("Itasca") brought this Motion for Relief from Automatic Stay pursuant to 11 U.S.C. § 362(d) in the Chapter 11 bankruptcy of 211 Waukegan LLC (the "Debtor"). After notice and a hearing, after submission of arguments in writing, and for the reasons set forth herein, Itasca's motion will be denied.

## BACKGROUND

The Debtor is an Illinois limited liability company with its principal place of business located at 211 Waukegan Road, Suite 300, Northfield, Illinois 60093. On October 2, 2008, the Debtor executed and delivered to Itasca a promissory note (the "Note") payable to Itasca in the original principal amount of $2,812,000.00. To secure payment of the Note, the Debtor executed and delivered to Itasca a first mortgage (the "Mortgage"), whereby the Debtor granted, among other things, a security interest in the commercial multi-tenant office building located at 211 Waukegan Road, Northfield, Illinois (the "Property"). The Mortgage was duly recorded on October 7, 2008 with the Cook County Recorder of Deeds as Document No. 0828126112. Northbrook Bank and Trust Company has a junior lien against the Property.

Beginning in March 2010, the Debtor was in default under the Note for failing to make the required monthly payment of $18,707.42 and for failure to pay real estate taxes. Thereafter, Itasca served a notice of default on the Debtor. Itasca accelerated the entire debt due under the Note when the Debtor failed to cure the defaults. On July 20, 2010, Itasca initiated a foreclosure action against the Debtor under Illinois law in the Circuit Court of Cook County, Illinois, in a case captioned *Itasca Bank & Trust Co. v. 211 Waukegan, LLC, et. al.*, Case No. 10 CH 31069. On August 31, 2010, the Circuit Court of Cook County entered an order appointing Kenneth Motew of MO2 Properties LLC (the "Receiver") as receiver. The Receiver has been in possession and control of the Property since that time.

On January 18, 2011, the state court entered a Judgment of Foreclosure and Sale in favor of Itasca and against the Debtor in the amount of $2,900,573.82. Pursuant to the Judgment of Foreclosure and Sale, a judicial sale of the Property by the Cook County Sheriff was scheduled for March 30, 2011. On March 30, 2011, just before the judicial sale was to take place, the Debtor filed a voluntary petition for Chapter 11 bankruptcy as a single asset real estate case. The filing of that petition invoked the automatic stay under 11 U.S.C. § 362(a).

On April 8, 2010, Itasca filed a Motion to Excuse Compliance with Section 543 of the Bankruptcy Code seeking to keep the Receiver in place during the pendency of the bankruptcy case. The Debtor agreed to entry of an interim order to keep the Receiver in place pending resolution of that motion. As of this date, the Receiver is still in place. On April 12, 2011, Itasca filed this Motion for Relief from the Automatic Stay.

## UNDISPUTED FACTS

Evidence was taken and the parties rested. The parties submitted a stipulation of facts, and other matters set forth below are drawn from the pleadings and evidence.

The total rental income from the Property for the period September 1, 2010 through May 10, 2011 was $98,133.13. In addition to expenses associated with operating the Property, the Receiver has been using rents from the Property to pay himself a management fee, to pay the fees and expenses incurred by his attorneys in the foreclosure action, and to pay his fees for attending hearings in the foreclosure proceeding. The Receiver's Cash Flow Report for the period September 1, 2010 through May 10, 2011, shows total expenses of $160,360.32, resulting in a deficit of $62,227.19. The Receiver had a cash balance of $13,449.50 as of May 10, 2011.

Itasca advanced to the Receiver the sum of $75,676.69 pre-bankruptcy to pay real estate taxes on the Property, including the 2009 taxes and the first installment of 2010 taxes, which were not paid by the Debtor. Itasca paid $14,000 to an attorney to appeal the real estate assessment in order to reduce taxes for 2010. The 2009 real estate taxes on the Property totaled $44,911.98. No post-bankruptcy real estate taxes are due on the Property and will not be due until the fall of 2011.

The entire third floor of the Property is leased to American Protective Technology ("APT") pursuant to a lease dated January 4, 2010 (the "APT Lease"). The managing member of APT is Bea Kabbani, who is married to the Debtor's president. The lease to APT provides that APT is not obligated to pay any rent until January 2012. Beginning January 2012, rent due from APT will be $3,500 per month.

3

The Debtor also entered into a lease with HSBA, Inc. ("HSBA") dated March 19, 2010 for Suite 200 and 230 located at the Property (the "HSBA Lease"). The HSBA Lease is for more than half of the rentable office space on the second floor of the Property. The HSBA Lease provides that HSBA is not obligated to pay any rent until March 2012. Beginning March 2012, rent will be $2,500 per month.

The Debtor filed its First Amended Plan of Reorganization on May 12, 2011. After final arguments on the instant Motion, Debtor filed its Third Amended Plan of Reorganization (the "Plan") and Disclosure Statement on June 5, 2011. Attached to the Disclosure Statement was Exhibit B which contained the Debtor's three-year cash flow and budget projections. Those projections were largely based on evidence supplied by the Debtor at trial.

After the parties rested, the Debtor sought and was granted leave to reopen the evidence and supplied additional proof of financial support for its Plan. Ms. Kabbani testified that APT is prepared to escrow the amount accruing for real estate taxes during the pendency of the bankruptcy case, assuming the stay is not lifted. Ms. Kabbani stated that APT has applied for a letter of credit with Fifth Third Bank and expects that the approval process should be completed and the letter of credit established by June 25, 2011. Furthermore, Ms. Kabbani testified that she is prepared to escrow $3,750 per month for accruing real estate taxes on 211 Waukegan Road and that she is personally prepared to fund the Plan in the amount of $150,000 in the event APT is unable to secure a letter of credit. She showed evidence of personal assets sufficient to enable her to honor that commitment.

Neither the Debtor nor the Receiver is currently paying any sums to Itasca. The Property is currently insured. The parties have stipulated that the Debtor has no equity in the Property.

4

## DISCUSSION

A creditor may obtain relief from the automatic stay:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> > (A) the debtor does not have an equity in such property; and
> > (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).

Itasca has the burden on the issue of the Debtor's equity in the Property. *See* 11 U.S.C. § 362(g)(1). The Debtor has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g)(2). Whether the automatic stay is modified or lifted is within the discretion of the bankruptcy court. *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995).

### I. 11 U.S.C. 362(d)(1)

A creditor is entitled to adequate protection only if the debtor's property is declining in value. *United Sav. Ass'n. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("[T]he 'interest in property' referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the bankruptcy reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay.") A creditor must therefore prove a decline in the value of property in order to establish a prima facie case of lack of adequate protection.

Itasca contends under this standard that its interest in the Property is not adequately protected. It first argues that the Property operated at a negative cash flow between September 2010 and May 2011 and that Debtor lacks cash reserves. Itasca did not demonstrate that this has

necessarily affected the value of the Property. Cash reserves would affect the ability of the Receiver to meet monthly obligations, but Itasca did not show how lack of substantial cash reserves has or will decrease the value of the Property. Itasca ignores the fact that, as of mid-May, the Receiver had a cash balance of more than $13,000. Likewise, Itasca does not explain how a negative cash flow balance between September 2010 and May 2011 affects the present value of the Property. Itasca has not shown that the Debtor would be unable to provide necessary repairs and maintenance to the Property or make improvements. In fact, the Debtor points out that a contributing factor to the negative cash flow during the relevant period was a result of non-recurring expenses such as changing locks and installing new security cameras. Because Itasca did not show that the sometimes negative cash flow balance and lack of substantial reserves is causing value of the Property to decline, these arguments are flawed.

Itasca next contends that it was required pre-bankruptcy to advance more than $66,000 to pay real estate taxes on the Property and that taxes are currently accruing on the Property that will be due this fall. Itasca cites *In re McKillips*, 81 B.R. 454 (Bankr. N.D. Ill. 1987) for support. In that case, the debtor still owed taxes from the previous year and taxes from the current year were accruing. *Id.* at 457. It was held that the creditor's equity cushion must be reduced by the amount of delinquent taxes. *Id.* However, there was no indication in *McKillips* that reduction included taxes that were accruing, but not yet due. In this case, no post-bankruptcy real estate taxes are currently due. Funds earlier advanced by Itasca affect only the total amount of debt owed by the Debtor, not the value of the Property post-bankruptcy "during the term of the stay." *Timbers*, 484 U.S. at 370. Moreover, the Debtor showed that Ms. Kabbani intends to escrow $3,750 per month for the payment of real estate taxes and has personal assets available to do so. Therefore, Itasca's

argument that accruing real estate taxes are causing the value of the Property to decline is without merit.

Itasca further argues that the Debtor is not currently making any debt service payments to it. However, Itasca is not entitled to debt service payments under the Bankruptcy Code. First, undersecured creditors are not entitled to post-petition interest on the value of their claims. *Timbers*, 484 U.S. at 382. The parties stipulated that there is no equity in the Property and, therefore, it is undisputed that Itasca is undersecured. Second, the Debtor was not yet required to commence monthly payments to Itasca under 11 U.S.C. § 362(d)(3)(B) because the ninety day period from the filing of the petition had not yet run while the instant motion was litigated. The bankruptcy case was filed on March 30, 2011, and the ninety day period does not run until June 28, 2011. Therefore, this argument is without merit, though it may be reasserted should said payments not be made.

Therefore, cause does not exist under § 362(d)(1) to grant relief from the automatic stay.

## II.    11 U.S.C. 362(d)(2)

Section 362(d)(2) would allow relief from the automatic stay should the Debtor have no equity in the Property and the Property were not necessary to an effective reorganization. *See* 11 U.S.C. § 362(d)(2). Itasca has the burden of demonstrating that the Debtor has no equity, and the Debtor has the burden of demonstrating that the Property is necessary to an effective reorganization. *See* 11 U.S.C. § 362(g). The Debtor must show that there is "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers*, 484 U.S. at 375-76 (internal quotation omitted). The Debtor must establish that "(1) it is moving meaningfully to propose a plan of reorganization; (2) the proposed or contemplated plan has a realistic chance of

7

being confirmed; and (3) the proposed or contemplated plan is not patently unconfirmable." *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) (internal quotation omitted). The parties have stipulated that the Debtor has no equity in the Property. Therefore, the burden is on the Debtor to demonstrate that the Property is necessary to a reorganization under a realistic plan.

Itasca argues that the Debtor has failed to demonstrate any realistic prospect of an effective reorganization. First, Itasca contends that the Plan contains no specific information as to how the Plan will be funded and has not retained a funding commitment. The Plan provides that APT will contribute $150,000 in exchange for equity in the newly reorganized debtor. Ms. Kabbani, the managing member of APT, testified that APT is in the process of obtaining a letter of credit from Fifth Third Bank for this amount. Ms. Kabbani further testified that she will personally contribute the funds in the event APT is unable to secure a letter of credit. Ms. Kabbani's statement goes beyond mere speculation. It demonstrates a realistic commitment on the part of APT and Ms. Kabbani to fund the Debtor's Plan.

Itasca also argues that no new leases have been entered into, and there has been no indication of interest in any new leases which would increase the Property's revenue. The Receiver has made no meaningful effort to lease vacant space in the Property. Although the Disclosure Statement was submitted after the close of arguments on this Motion and is not itself evidence, its contents show a realistic calculation. Exhibit B to the Disclosure Statement projects $237,466.50 per year in rental income for 2012 through 2014, assuming a 15% vacancy rate. This figure is almost double the current rental income from the Property, but it reflects the ending of the rent abatements in the APT and HSBA leases and a modification to the HSBA Lease whereby

HSBA will pay $4,000 per month instead of $2,500. Additionally, the Plan will be funded by APT's $150,000 contribution. The Debtor has demonstrated that it will have sufficient income to fund the Plan.

Itasca next argues that the Plan improperly provides for a 6% interest rate on its secured claim when it is entitled to the Illinois judgment rate of 9%, citing *McKillips*. *McKillips* did not deal with the appropriate cramdown interest rate under a plan of reorganization, but rather a determination of appropriate adequate protection payments. *McKillips*, 81 B.R. at 458-59. The Debtor correctly points out that under 11 U.S.C. § 1129(b)(2)(A)(i)(II), the Plan need only provide for deferred cash payments totaling the amount of the secured claim as of the effective date of the Plan. The Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004) held that the appropriate cramdown interest rate should be calculated by adjusting the prime national interest rate based on risk of nonpayment. *Id.* at 478-80. Itasca's argument that it is entitled to the Illinois statutory judgment interest rate of 9% is rejected. However, it may contest by way of objection to the proposed Plan whether the 6% interest rate offered meets the *Till* standard.

Finally, Itasca argues that the contemplated Plan does not appropriately account for certain expenses. Itasca argues that the Plan cannot eliminate management fees from its projections because Debtor indicated that it intends to hire a manager, that the Debtor fails to anticipate legal fees associated with real estate taxes, and that payments to be made to creditors under the Plan will cause the Debtor to operate at a deficit causing the $150,000 to be contributed by APT to be used up too soon.

It is true that the Debtor's initial projections showed the Debtor operating at a deficit between $8,477.18 and $2,477.18 per month over the first fourteen months of the Plan and do

not appear to account for legal fees associated with a real estate tax appeal or payments to unsecured creditors. However, the Debtor has since filed its Disclosure Statement to the Plan providing detailed and more realistic cash flow and budget projections. Treating that as argument, and finding evidence to support it, the Debtor has demonstrated a plausible plan. For years 2012 through 2014, Exhibit B to the Disclosure Statement projects management fees of $12,000 per year, real estate taxes of $60,000 per year, and interest payments to Itasca of $100,800 per year. Exhibit B also projects payments totaling $17,000 to unsecured creditors in 2011 and $17,000 in 2012. Finally, the Plan anticipates administrative expenses of $20,000 for 2011. The projections do not anticipate a negative ending balance in any of those years. The projected real estate taxes do not specify whether legal fees are included, but with real estate taxes of approximately $45,000 in 2009, one can reasonably infer that the figure includes legal fees to be incurred in an appeal to reduce the taxes.

The Debtor's cash flow and revised budget projections included in Exhibit B to the Disclosure Statement addressed the legitimate concerns of Itasca. These projections contemplate the expenses to be incurred in the operation of the Debtor's business and the expenses and payments to be made under the Plan. The Debtor has also demonstrated that the Plan will be adequately funded. Therefore, the Debtor has carried its burden of showing that a realistic plan is in prospect, that it has a realistic chance of confirmation, and that it is "not patently unconfirmable." Itasca may therefore not obtain relief from the automatic stay under § 362(d)(2).

## CONCLUSION

For the foregoing reasons, an order denying Itasca's Motion for Relief from Automatic Stay will separately be entered in favor of the Debtor. A hearing is set on the Debtor's Plan and

Disclosure Statement beginning July 25, 2011 at 11:00 a.m. Itasca will certainly be able to raise some of the issues asserted by it here at those hearings where the Debtor will face a stricter standard. "Not patently unconfirmable" will not be sufficient to get the Plan confirmed.

Dated this 28th day of June, 2011.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge